IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| United States of America | ) | Cr. No.: 4:23-cr-00399-JD |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| | ) | |
| JOSHUA LEVON WEST, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on Defendant Joshua Levon West's ("Defendant" or "West") Motion to Suppress (DE 33). This Court held an evidentiary hearing on February 8, 2024, to consider West's motion. For the reasons stated below, Defendant's motion is denied.

### **FACTUAL FINDINGS**[1]

On March 9, 2023, Officer James Smith of the Myrtle Beach Police Department ("Officer Smith") was conducting a surveillance assignment in an undercover capacity when he observed occupants in a silver SUV ("Vehicle") purportedly engage in a narcotics transaction. He relayed this information over the police radio. Officer Ben Wilson of the Myrtle Beach Police Department ("Officer Wilson"), also in an undercover capacity, began following the Vehicle after hearing the information from Officer Smith. Officer Wilson observed the Vehicle change lanes without signaling and radioed a marked unit, Officer Tyler Struckus of the Myrtle Beach Police Department ("Officer Struckus"), to initiate a traffic stop on the Vehicle.

Officer Struckus initiated the traffic stop, and the driver came to a stop on Oleander Drive. Defendant West was a passenger in the vehicle. A few minutes after Officer Struckus initiated the

---

[1] "In the course of deciding a motion to suppress, the district court may make findings of fact, as well as rulings of law . . . ." United States v. Stevenson, 396 F.3d 538, 541 (4th Cir. 2005).

1

traffic stop, Officer Austin Cox of the Myrtle Beach Police Department ("Officer Cox"), who was nearby and working the same surveillance operation, arrived on the scene. Officer Struckus exited his patrol car, approached the driver's side window, and asked the driver, Ebony Rawls ("Rawls"), for her driver's license and registration information. Officer Struckus went back to his vehicle to process Ms. Rawls's license and, during the processing, told a third officer that he thought he smelled marijuana but could not be sure because the occupants were smoking cigarettes. Upon processing Ms. Rawls's license and learning that it was soon to be suspended, he went back to the Vehicle and asked Ms. Rawls to step out of the vehicle to speak with her about her upcoming license suspension. After speaking with her about the license suspension issue, he then questioned her regarding whether she had illegal items in her car and claimed he smelled the strong odor of marijuana on her.[2] After that, Officer Struckus informed Ms. Rawls that he would initiate a free air drug dog sniff ("dog sniff") to verify or dispel his suspicions.

While Officer Struckus was processing the initial stop and investigating his suspicions of other criminal activity with the driver, Officer Cox spoke with West in the passenger seat. During this interaction, Officer Cox testified that he smelled marijuana and claims West informed him that there was a "roach" – the burnt end of a rolled marijuana cigar – previously or currently in the vehicle. During the conversation, West also stated that he was on probation.

Before Officer Struckus initiated the dog sniff, he walked over to Officer Cox, who informed him he also smelled marijuana and that West disclosed that there was a roach previously or currently in the vehicle. At that point, the officers asked West to exit the Vehicle, stating they have probable cause to search it. Before West exited the Vehicle, Officer Cox asked West if he had anything illegal including drugs or a firearm. West stated there was a firearm in the Vehicle.

---

[2] A third officer (who did not testify at the hearing) was heard on Officer Struckus's body camera video saying that he thinks the odor was cigarette smoke.

2

During the search, officers found a handgun that was registered as stolen and two marijuana roaches. That said, West now seeks to suppress the handgun as evidence in the charges pending against him.

### **LEGAL STANDARD**

The Fourth Amendment protects citizens against unreasonable searches and seizures. See U.S. Const. Amend. IV. "The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard 'reasonableness' upon the exercise of discretion by government officials, including law enforcement agents, in order 'to safeguard the privacy and security of individuals against arbitrary invasions . . . .'" Delaware v. Prouse, 440 U.S. 648, 653–54 (1979) (quoting Marshall v. Barlow's, Inc., 436 U.S. 307, 312 (1978)). "[S]earches and seizures 'conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.'" Minnesota v. Dickerson, 508 U.S. 366, 372 (1993) (citations omitted).[3]

"The exclusionary rule 'generally prohibits the introduction at criminal trial of evidence obtained in violation of a defendant's Fourth Amendment rights . . . .'" United States v. Stephens, 764 F.3d 327, 335 (4th Cir. 2014) (quoting Pennsylvania Bd. of Prob. & Parole v. Scott, 524 U.S. 357, 359 (1998)). "[T[he exclusionary rule is not a 'strict liability regime,' and exclusion of evidence has 'always been [the] last resort, not [the] first impulse.'" Id. (internal citations omitted). At a suppression hearing, the Government bears the burden of proving a search or seizure did not violate the Fourth Amendment. See United States v. Matlock, 415 U.S. 164, 177 n.14 (1974).

---

[3] Examples of well-established exceptions include, but are not limited to, the exigent circumstances exception, Mincey v. Arizona, 437 U.S. 385, 394, (1978), the search incident to arrest exception, United States v. Robinson, 414 U.S. 218, 224 (1973), the automobile exception, Maryland v. Dyson, 527 U.S. 465, 466, (1999), the stop and frisk exception, Terry v. Ohio, 392 U.S. 1 (1968), the consent exception, Fla. v. Jimeno, 500 U.S. 248, 250–51 (1991), and the "plain-view" doctrine, United States v. Legg, 18 F.3d 240, 242 (4th Cir. 1994).

"[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence." Id.

### DISCUSSION

West contends, "the officers unconstitutionally extended this stop thereby making this defendant's seizure and subsequent search of the vehicle unconstitutional. Therefore, all of the evidence obtained as a result of these unconstitutional actions should be suppressed." (DE 33-1, p. 10). The Court disagrees and finds the officers had the authority to extend the stop based on reasonable suspicion of criminal activity. "It is well established that the '[t]emporary detention of individuals during the stop of an automobile by the police ... constitutes a 'seizure,'' no matter how brief the detention or how limited its purpose." United States v. Branch, 537 F.3d 328, 335 (4th Cir. 2008) (citations omitted). But "[b]ecause an ordinary traffic stop is more analogous to an investigative detention than a custodial arrest, we analyze the propriety of a traffic stop using the dual inquiry announced in the Supreme Court's holding in Terry v. Ohio, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)." United States v. Green, 740 F.3d 275, 279 (4th Cir. 2014).

That inquiry asks, "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20. "Observing a traffic violation provides sufficient justification to detain the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop." Branch, 537 F.3d at 335. "Like a Terry stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." Rodriguez v. United States, 575 U.S. 348, 354 (2015) (internal and external citations omitted). Among other things, "ordinary inquiries incident to [the traffic] stop," include "checking the driver's license, determining whether

4

there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." Id. at 355. West does not dispute that the ordinary inquiries incident to a traffic stop occurred; instead, he challenges whether he was detained beyond the scope of the traffic stop.

"Where the occupants of a vehicle are detained beyond the scope of a routine traffic stop, the officer must be able to articulate reasonable suspicion that criminal activity is afoot." United States v. Brugal, 209 F.3d 353, 357 (4th Cir. 2000) (quoting Terry, 392 U.S. at 30). "A reasonable suspicion exists when law enforcement officers possess 'a particularized and objective basis for suspecting the person stopped of criminal activity.'" United States v. Singh, 363 F.3d 347, 355 (4th Cir. 2004) (quoting Ornelas v. United States, 517 U.S. 690, 696). Thus, "[a] reasonable suspicion is demonstrated when an officer is able to 'point to specific and articulable facts which, taken together with rational inferences from those facts, evince more than an inchoate and unparticularized suspicion or hunch of criminal activity.'" United States v. Ortiz, 669 F.3d 439, 444 (4th Cir. 2012). "[W]hen following up on the initial reasons for a traffic stop, the officer must employ 'the least intrusive means reasonably available to verify or dispel [his] suspicion in a short period of time.'" United States v. Palmer, 820 F.3d 640, 649 (4th Cir. 2016) (citation omitted). "To be clear, the law does not require that the officer employ the least intrusive means conceivable." Id.

Here, the initial stop was justified after the Vehicle in which West was riding was observed changing lanes without properly signaling.[4]  Thus, at this point, the tolerable duration of the stop

---

[4]   At the hearing, West attacked the credibility of Officer Smith who initially observed the Vehicle at a location under surveillance for possible criminal activity and claims to have seen a narcotics transaction. But later, the vehicle was followed by Officer Wilson who observed the vehicle change lanes without signaling. That said, whether "[a] traffic stop is reasonable . . . is an objective standard. The standard is met, therefore, when officers observe a traffic violation, regardless of their true, subjective motives for stopping the vehicle. See United States v. Johnson, 734 F.3d 270, 275 (4th Cir. 2013) (internal citations

was limited to the ordinary inquiries of a routine traffic stop. But Officer Struckus testified that when the driver rolled down her window during the initial inquiry he believed he smelled marijuana but could not be sure because the passengers were smoking cigarettes. This belief was confirmed on body cam footage when Officer Struckus was back in his patrol car running Ms. Rawls's driver's license, and he stated to another officer that he thought he smelled marijuana. Further, once Officer Struckus got Ms. Rawls out of the car to complete the initial traffic stop, i.e., inform her of her upcoming license suspension, he claimed to have smelled a strong odor of marijuana.[5] Thus, Officer Struckus had reasonable suspicion, based on the specific and articulable fact that he detected the odor of marijuana, that criminal activity was afoot, which was the presence of marijuana in the car.[6] Officer Struckus, therefore, had the authority to extend the stop and detain the occupants of the vehicle beyond the stop's initial scope to verify or dispel his suspicion of the presence of marijuana in the car.[7]

---

omitted). Thus, even if the officers' subjective intent in pulling the vehicle over was to investigate other possible criminal activity, because Officer Wilson observed a traffic violation, the initial stop was reasonable.

[5]     West contends, "Officer Struckus impermissibly extends the stop by getting Ms. Rawls out of the car to inform her that her license, although currently valid, was going to be suspended the next day." (DE 33-1, p. 8.) But "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." Ohio v. Robinette, 519 U.S. 33, 38–39, (1996) (citing Pennsylvania v. Mimms, 434 U.S. 106, 111, n. 6 (1977)).

[6]     West contends that "neither Officer Struckus, nor any other officer on the scene, smelled the odor of marijuana emanating from the passenger compartment of the vehicle." (DE 33-1, p. 7.) But the record does not support this assertion.

[7]     Generally, "[a]n officer's detection of marijuana odor is sufficient to establish [] probable cause," "to believe the vehicle contains evidence of criminal activity," such that the officer may search the vehicle. United States v. Palmer, 820 F.3d 640, 650 (4th Cir. 2016). Thus, at the hearing, West inquired into why the officers did not immediately search the vehicle if they claimed to have smelled marijuana rather than extending the stop to continue investigating. But "the reasonable suspicion 'is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.'" United States v. Foreman, 369 F.3d 776, 781 (4th Cir. 2004) (quoting Illinois v. Wardlow, 528 U.S. 119, 123 (2000)). Thus, Officer Struckus, contending he may have detected the odor of marijuana but was unsure because of the presence of cigarette smoke, at least meets the threshold of reasonable suspicion and taking extra steps to ensure he had sufficient probable cause to search the vehicle was reasonable. See United

Additionally, Officer Struckus acted reasonably in attempting to verify or dispel his suspicions. See United States v. Palmer, 820 F.3d at 649 ("If an officer acts unreasonably in attempting to confirm his suspicions during a traffic stop, however, he runs afoul of Terry's second prong.") After completing the purpose of the initial traffic stop – informing Ms. Rawls of her upcoming license suspension – Officer Struckus asked Ms. Rawls specific questions related to his reasonable suspicion of marijuana being present in the car and informed her that a drug dog would be deployed to do a free air sniff around the vehicle. West contends that, to be constitutionally permissible, the free air dog sniff should have been conducted *while* Officer Struckus performed the authorized activities associated with the traffic stop. (DE 33-1, p. 8). But "the law does not require that the officer employ the least intrusive means *conceivable*," United States v. Palmer, 820 F.3d at 649 (emphasis added). Further, as previously determined, Officer Struckus had reasonable suspicion of marijuana being in the vehicle, authorizing an extension of the stop to conduct a dog sniff. See United States v. Hill, 852 F.3d 377, 382 (4th Cir. 2017) (a "sniff . . . may not prolong the duration of the traffic stop *absent* consent of those detained or reasonable suspicion of criminal activity" (emphasis added)).

That said, a dog sniff was never carried out because the officers obtained probable cause to search the vehicle before the dog sniff was initiated, and that probable cause was obtained within the time the stop was prolonged based on reasonable suspicion of marijuana being present in the Vehicle. The officer's probable cause was based on Officer Cox smelling marijuana when he was speaking with West in the passenger seat and West informing him that there was a "roach" previously or currently in the vehicle – information that helped verify Officer Struckus's claims

---

States v. Palmer, 820 F.3d at 650 ("although an officer may extend a traffic stop when he possesses reasonable suspicion, he cannot search the stopped vehicle unless he obtains consent, secures a warrant, or develops probable cause to believe the vehicle contains evidence of criminal activity").

that he detected the odor of marijuana previously.  See <u>United States v. Palmer</u>, 820 F.3d 640, 650 (4th Cir. 2016) ("An officer's detection of marijuana odor is sufficient to establish such probable cause," "to believe the vehicle contains evidence of criminal activity.")  Thus, once Officer Cox informed Officer Struckus of his findings, the dog sniff was unnecessary to establish probable cause to search the vehicle.  Further, West subsequently gave the officers additional grounds for probable cause to search the vehicle when he informed Officer Cox that he was on probation and there was a firearm in the Vehicle.  Therefore, none of the officers' challenged actions constitute an unreasonable search or seizure under the Fourth Amendment.

## **CONCLUSION**

For these reasons, West's Motion to Suppress (DE 33) the handgun as evidence in the charges pending against him is **DENIED**.

**IT IS SO ORDERED.**

February 23, 2024
Florence, South Carolina

Joseph Dawson, III
United States District Judge